[No. 4713.]

# THE DENVER CONSOLIDATED ELECTRIC COMPANY v. WALTERS.

1. **Appellate Practice—Former Appeal—Court of Appeals Opinion—Law of the Case.**

The decision of the court of appeals rendered on a former appeal of a case, does not constitute the law of the case on a subsequent appeal to this court.—P. 305.

2. **Practice in Civil Actions—Electricity—Personal Injuries—Negligence—Pleading—Inapplicable Instructions—Error.**

In an action against an electric light company for injuries received by the inmate of a' dwelling house, supplied with electricity by defendant, the complaint alleged that, by reason of defendant's negligence in failing to keep its connecting wires properly insulated, plaintiff was injured by coming in contact therewith. Held, that an instruction was erroneous which, in effect, stated that defendant was liable if plaintiff was injured by reason of its negligence in selecting the locality upon the building where the wire was placed, since no such act of negligence was charged in the complaint.—P. 306.

3. **Practice in Civil Actions—Electricity—Personal Injuries—Pleading—Negligence—Evidence—Instructions.**

In an action against an electric light company for injuries received by an inmate of a dwelling house, supplied with electricity by defendant, the latter's failure to properly insulate the connecting wires was the only substantive cause of negligence alleged. Held, that it was proper to admit evidence as to the location upon the house of the connecting wires to be considered by the jury in determining the degree of care required of defendant in maintaining such wires in a safe condition; the trial court, however, should, upon the admission of such evidence, admonish the jury that it was not admissible to establish any substantive act of negligence alleged in the complaint, but was admissible solely for the purpose of enabling them to measure the degree of care required of defendant in maintaining the wires in a properly insulated condition, and later in its formal instruction should advise them as to the limited purpose for which they could consider it.—P. 308.

4. **Practice in Civil Actions — Pleading — Negligence — Specific Acts—Demurrer—Issue and Proof.**

Where a complaint avers negligence in general terms, it is good as against a general demurrer; but when plaintiff specifies

a particular act or acts of negligence, he is confined in his proofs to them alone.—P. 309.

5.   Electricity—Supplying Light to Dwelling Houses—Degree of Care Required—Negligence.

An electric light company must exercise the same degree of care to protect from injury the inmates of a house to which it is furnishing light, as that which it is obliged to use to safeguard the traveling public from its overhanging wires in the highways.—P. 312.

6.   Practice in Civil Actions—Instructions—Propositions of Law Concretely Stated.

In instructing the jury, propositions of law should be concretely stated and not in the abstract, and the entire law upon any one proposition should, as far as practicable, be embodied in one instruction rather than in two or more widely separated ones.—P. 312.

7.   Electricity — Insurance — Electric Light Companies Not Insurers.

Electric light companies are not insurers of the safety of the public or of their patrons.—P. 313.

8.   Appellate Practice — Electricity — Expert Testimony—Exclusion of Evidence—Later Allowed—Harmless Error.

In an action against an electric light company for injuries received on account of the alleged imperfect insulation of one of its wires, an expert was asked whether or not in his opinion, based upon certain assumptions of fact, which the evidence tended to prove, at the time of the injury, the wire was properly insulated, and the court sustained an objection thereto, but afterwards the witness was allowed to answer the same or a similar question.   Held, that such testimony was competent and should have been admitted in the first instance, but that no material injury was occasioned by the earlier ruling.—P. 313.

9.   Practice in Civil Actions—Electricity—Personal Injuries—Negligence—Evidence.

In an action against an electric light company for injuries received on account of the alleged imperfect insulation of one of its wires, the defendant introduced evidence to the effect that it had used the safest method of insulation known, but there was no direct evidence as to the actual condition of the wire prior to the time plaintiff grasped it and received the injury complained of.  Held, that, under the circumstances, the rejection of a further offer of evidence to show that there was not known or commercially in use any insulation that was perfectly or absolutely safe under the conditions, was prejudicial error.—P. 313.

10.   **Practice in Civil Actions—Electricity—Personal Injuries—
     Negligence—Contributory Negligence—Instructions.**

In an action against an electric light company for injuries
received on account of the alleged imperfect insulation of one of
its wires, the court instructed that if the plaintiff was of a de-
gree of intelligence at the time of the accident to know of the
dangerous qualities of electricity, still, unless he knew or had
some notice or reason to believe to the contrary, he was en-
titled to assume that the company had performed its whole duty
in the matter of insulating its wires, and that the same were in
a safe and proper condition, and to act upon this assumption.
Held, that such instruction might lead the jury to believe that
plaintiff might wholly neglect to take any precaution to avoid
danger from coming in contact with the wires, and therefore,
there should have been added the additional statement that
plaintiff nevertheless could not recover unless he exercised a
proper degree of care to avoid the danger, notwithstanding the
assumption that defendant had done its duty.—P. 316.

11.   **Practice in Civil Actions—Electricity—Personal Injuries—
     Contributory Negligence—Question for Jury.**

In an action against an electric light company for injuries
received on account of the alleged imperfect insulation of one of
its wires, the evidence showed that plaintiff, who was an inmate
of his father's house, observing that a glass insulator had fallen
from the support on which it was intended to rest, attempted to
replace it, and in so doing was injured by the current. Held,
that the question of contributory negligence of the plaintiff was
properly submitted to the jury under instructions that it was a
question of fact for them to determine in the circumstances of
the case, including the age, experience, knowledge and capacity
of plaintiff to apprehend the particular danger.—P. 316.

12.   **Electricity—Appliances—Accessibility to Children—Degree
     of Care—Rule.**

It is not the "mere possibility" but the "reasonable proba-
bility" that children may reach electrical appliances around
dwelling houses that invokes the rule requiring persons or cor-
porations installing electrical appliances, under such circum-
stances, to exercise the highest degree of care which skill and
foresight can attain consistent with the practical conduct of its
business under the known methods and the present state of the
particular art.—P. 317.

*Appeal from the District Court of the City and County of Denver.*

*Hon. P. L. Palmer, Judge.*

Action by Clifton Wood Walters against The Denver Consolidated Electric Company. From a judgment for plaintiff, defendant appeals.

*Reversed.*

Messrs. Wolcott, Vaile & Waterman (Mr. Wm. W. Field, of counsel), for appellant.

Mr. E. T. Wells, Mr. J. H. Chiles, and Mr. I. P. McNeal, for appellee.

Mr. Justice Campbell delivered the opinion of the court:

In his complaint, the plaintiff charges the defendant company with negligence which occasioned him personal injury, for which he asks compensation in damages. The answer of the defendant denies that it was negligent, and by an affirmative defense alleges that plaintiff's injuries, if any, were brought about solely as the result of his own negligent act. The trial to the jury upon these issues resulted in a verdict for the plaintiff, and judgment went accordingly, from which the defendant appealed, and has assigned many errors, of which the material and substantial ones are considered.

This was the third trial of the action. Upon the first trial the action was dismissed by the district court upon the ground that the complaint did not state a good cause of action. Upon appeal to the court of appeals, this judgment was reversed, the court, by Thomson, P. J., holding that the complaint was good.—*Walters v. Electric Light Co.,* 12 Colo. App. 145.

Upon the second trial, the jury returned a verdict for the defendant, and judgment entered thereon was reversed by the court of appeals because of erroneous instructions.—*Walters v. D. C. E. L. Co.,* 17 Colo. App. 192.

1.   The first proposition advanced by appellee, which we consider, is that on the present appeal the decisions of the court of appeals in the cases mentioned constitute the law of the case.   This point is conclusively settled against appellee by previous decisions of this court.—*Brown v. Tourtelotte,* 24 Colo. 204; *Davidson v. La Plata Co.,* 26 Colo. 549; *City of Pueblo v. Shutt Inv. Co.,* 28 Colo. 524.   The point, however, is not important here because the law, as laid down by the court of appeals, meets with our approval.

2.   In view of instruction No. 7 given by the court, it is important with particularity to state that part of the complaint charging the negligence of the defendant and the antecedent matters of description or inducement.   After allegations that defendant corporation was maintaining and operating an electric light plant in the city of Denver for conveying and supplying electric light to dwelling houses and other buildings therein, and that it had connected its wires with the dwelling house of plaintiff's father, with whom plaintiff, a minor twelve years of age, was then living, and that such connection was for the purpose of supplying light to the house, and defendant had attached to the house, directly under one of the windows, an electrical device called a converter, and had set and placed certain iron supports to receive and hold glass insulators upon which were attached wires connecting with the house and conveying thereto the electric current for furnishing light, the complaint proceeds to charge that whereas it was the duty of defendant to cause the wires to be sufficiently

and securely covered and insulated, and at all times so to keep and maintain them, the defendant, on the contrary, so negligently managed and conducted the wires that the covering thereon became weak and broken and out of repair, so that the wires were not covered or insulated, the result of which was that the current of electricity borne thereupon would and did pass therefrom; that on the day in question the plaintiff, who was an inmate of his father's house, while looking out of the window of the bath-room, and seeing that one of the glass insulators had by some means fallen, or been removed, from the iron support where it was wont to rest, and not knowing the dangerous condition of the wire, or that any electric current could or might pass therefrom, and not realizing that the attempt to replace the insulator was attended with any danger to him, seized hold of the insulator in order to place it upon the iron support, and to the wire which was so attached, being naked and bare near to the insulator, the covering thereof being broken, plaintiff's hand and fingers were drawn by the electric current borne by the naked wire, or accidentally and without plaintiff's fault placed thereon by him, and "thereby, and *solely* by means of the negligence and want of due skill and care of the defendant in and about maintaining and caring for the said wire and preserving the same insulated and safe as aforesaid, the electrical current, borne upon the said wire, passed to and into the hand and body of plaintiff, and by the force thereof," etc., the injuries were sustained.

The 7th instruction is as follows:

"It is the duty of every corporation which undertakes to supply the electric current to a dwelling to exercise a high degree of care in order to prevent injury to those inhabiting the dwelling, and particularly children by coming in contact with their wires

and other appliances, and such care must be exercised both in protecting such wires and appliances against contact, and in the selection of the locality where the same are placed, and if the defendant company failed to exercise this degree of diligence in either respect and by reason thereof the plaintiffs, or either of them, received injury without fault on their part, the defendant is liable.''

The paragraph in effect told the jury that plaintiff's cause of action was grounded upon two acts of negligence: one in selecting an improper place on the wall of the house for placing its wires and converter; the other in failing properly to keep them safe after they were placed there; and that, if the defendant failed in either respect to exercise the proper degree of diligence, it was liable if injury thereby was caused plaintiff without fault on his part.

This instruction is fundamentally wrong, and the error in giving it is accentuated since, in its third instruction, the court had fully defined what defendant's duty was, concerning the only charge of negligence specified, in maintaining its accessible wires. When at the trial plaintiff offered evidence concerning the location of the wires and electrical appliances, the defendant objected to the same upon the ground that the charge of negligence in the complaint was not in their location, but only in neglect in the maintenance of wires. The trial court, however, overruled the objection because, as the transcript shows, according to its notion the court of appeals had ruled such evidence of location admissible generally. An examination of the opinion of Gunter, J., in that case discloses that such evidence was held to be proper under the issues but for one purpose, and one only, and the district court, in holding the evidence admissible as relevant to a sup-

posed issue of negligence in location, clearly misapprehended the effect of the opinion.

The court of appeals, in considering two of the instructions of the district court upon the second trial, held that there was error therein for the reason that the jury thereby were told that they could not consider the location of the converter or transformer in determining the degree of care that should be exercised in preserving the wire in question properly insulated. Judge Gunter had already said, as had Judge Thomson upon the first review, that the gist of the charge of plaintiff was that the defendant, through negligence, permitted the wire in question to be in an uninsulated condition, and he held that such location was a material factor to be considered by the jury in determining the degree of care which the defendant should bestow by proper inspection and otherwise in maintaining the wire in a reasonably safe condition, adding: "If located at a point readily accessible, the law would require greater care of defendant to preserve the wire insulated than if the wire was located at an inaccessible point."

It thus clearly appears that, according to the ruling of the court of appeals, which we approve, the location of the wires and converter, though not set up by plaintiff as a substantive or separate charge or cause of action, was, nevertheless, material and proper to be considered by the jury in determining the degree of care to be exercised by the defendant in preserving and maintaining the wire in question in a safe and suitable condition, failure to do which was the only substantive cause of negligence relied on.

Although the trial court was right in overruling the defendant's objection to the admission of evidence as to the location of the electrical appliances for the reason just given, yet at the time of its ad-

mission the court should have admonished the jury that it was not admissible to establish any substantive act of negligence alleged in the complaint, but solely for the purpose of enabling them to measure the degree of care which the defendant is required to exercise in maintaining the wires in a properly insulated condition, and later on in its formal instruction should have advised the jury as to the limited purpose for which they could consider it. The plaintiff does not deny that this instruction tells the jury that they may hold the defendant if it has been guilty of negligence in the location of the electrical appliances, but says that the court should read the complaint as if such negligence was charged. It is true that where a complaint avers negligence in general terms, it is good as against a general demurrer; but where the plaintiff himself specifies a particular act or acts of negligence, he is confined in his proofs to them alone.

A careful examination of this complaint satisfies us that its allegations with reference to the location of the converter and the wires were merely for the purpose of setting forth the situation, and by way of inducement only, and there was no intention to charge, and there was no charge, that the defendant was guilty of negligence in such location. Indeed, the complaint plainly and specifically says that the injury was inflicted "solely by means of the negligence and want of due skill and care of the defendant in and about maintaining and caring for the said wire and preserving the same insulated and safe as aforesaid."

Plaintiff's argument that the judgment should not be set aside because the complaint was not properly amended to correspond to the evidence by the insertion of allegations of negligence in the location of the electrical appliances, has no merit because the

defendant specifically objected to its admission upon the ground that the complaint did not contain such charge, and there was no request at any time by the plaintiff thus to amend his complaint. The proof was, as we have said, properly received, but should have been restricted, by proper caution, at the time of its admission and also later in the instructions to the one purpose for which only it was legitimate.

We have tried to sustain this instruction for a reason not suggested in the record, but upon mature consideration we are unable to do so. It has been ruled by this and other courts that where a numbered instruction contains one or more entirely independent propositions of law, and the objection thereto is general, that if one or more of the distinct propositions are good, and others bad, the latter will not be considered under the general objection. Here the objection was to the instruction as a whole, but it contains but a single proposition of law stating the degree of care which the defendant is bound to exercise in either of two particulars, and the care is the same in both cases. In this connection, it should be said that defendant specifically requested the court to charge that plaintiff had not alleged in his complaint, and could not rely on, negligence of defendant in location of its appliances, but the court refused to do so.

The plaintiff strenuously argues that since there have been three trials of the action, it would be a hardship to reverse the judgment because of error in the giving of this instruction. We appreciate fully the force of the argument, but are reluctantly constrained to say that it does not and ought not to control us. We cannot overlook this flagrant error, In view of the previous trials and the decision of the court of appeals upon both reviews that the only

charge of negligence was failure in insulation, this error ought not to have been committed by the court. If counsel saw or read the instruction before its delivery, they might have called the court's attention to the mistake, or, if given without their previous knowledge, a request for its withdrawal or modification could have been made.   Without arbitrarily disregarding repeated decisions of this and other courts and ignoring the constitutional rights of the parties to an impartial trial, we cannot close our eyes to the manifest harm which this instruction necessarily caused defendant.   For this reason alone, we would have to reverse the judgment.

3.   Were it not for this grave error, some other rulings, at least questionable, and complained of by defendant, might not, of themselves, in view of the peculiar state of this record, require a reversal.   In view, however, of another trial, we ought to express our views concerning them to prevent a repetition of rulings which, if made at another time, might again cause a reversal of the judgment, if in plaintiff's favor.   It is fitting also to allude to still other questions of which defendant complains, which we shall see are not subject to its criticism.

Defendant, in the first of its numerous briefs, was insistent that the doctrine, as to the degree of care required in the kind of business defendant was carrying on, first announced by this court in *Denver Electric Co. v. Simpson,* 21 Colo. 371, is not applicable to the facts of the present case.   In that case, wherein was defined the duty of an electric light company to the traveling public, it was said that the degree of care was "the highest degree of care which skill and foresight can attain consistent with the practical conduct of its business under the known methods and the present state of the particular art."

In *Denver Electric Co. v. Lawrence,* 31 Colo. 301, the same doctrine was again announced where the plaintiff was a member of a family occupying a dwelling house to which the defendant was furnishing light. Defendant still insists that, though the *Lawrence case* is squarely against its contention, the decision is wrong, yet admits that, unless the question is reconsidered and the doctrine changed or modified, the ruling of the trial court as to this feature will be sustained, for it merely follows the earlier cases. The doctrine is again affirmed. We see no reason why the same degree of care should not be exercised by an electric light company to protect from injury the inmates of a house to which it is furnishing light as that which it is obliged to use to safeguard the traveling public from its overhanging wires in the highways.

4. Defendant objected to the non-observance by the trial court in instructing the jury of the admonition which this court in the *Simpson case* said should be given, namely, that the jury should be told that the defendant was bound to exercise that reasonable care and caution which would be exercised by a reasonably prudent and cautious man under the same, or similar, circumstances, with the additional statement that under a state of facts like that before the court there and here such degree of care, as matter of law, is "the highest degree of care which skill and foresight can attain consistent with the practical conduct of its business under the known methods and the present state of the particular art." We think our suggestion was substantially complied with at the trial, although we again repeat that, in instructing the jury, propositions of law should be concretely stated and not in the abstract, and that the entire law upon any one proposition should, so

far as practicable, be embodied in one instruction rather than in two or more widely separated ones. We cannot, however, say that any prejudice resulted to the defendant from the failure of the court literally to follow the practice commended.

5. Defendant argues that, unless it is the law that in a case of this sort the defendant is an insurer, this judgment cannot stand. Learned counsel say that there is no evidence at all to show that the particular spot in the wire in question was defective at or before the time the plaintiff's hand came in contact with it, and that only by resorting to the doctrine *res ipsa loquitur* has the plaintiff's case been made. In the *Simpson case, supra,* it was said that the defendant was not an insurer of the safety of the plaintiff. Such we believe to be a correct statement of the law. Defendant, however, is mistaken in its claim with respect to the evidence in this case. There was direct testimony from which it is legitimate inference that the wire was not properly insulated at the time, and immediately before, the injury was received.

6. While one of the defendant's experts was upon the stand, he was asked his opinion, upon certain assumptions of fact which some of the evidence tended to prove, whether or not, in his opinion, at the time of the injury the wire was properly insulated. At first the court sustained plaintiff's objection to the question, but afterwards the witness was allowed to answer the same or a similar question; hence no material injury was occasioned by the earlier ruling. This testimony was competent and ought to have been admitted in the first instance, notwithstanding plaintiff's objection.

7. Defendant offered evidence to show that there was not known or commercially in use any in-

sulation that was perfectly or absolutely safe under the conditions, and in the circumstances, described by plaintiff in his testimony and by defendant's witnesses. The court sustained an objection thereto, and this ruling is assigned as error. Defendant had already produced evidence that the insulation of this wire was that which was ordinarily used for exterior wiring. Plaintiff seeks to uphold this ruling upon the ground that the evidence offered was immaterial. In what respect immaterial, learned counsel do not say. The only ground that occurs to us upon which this ruling could be upheld is that since the negligence averred in the complaint consists, not in improper insulation in the first instance, but failure to keep the wire properly insulated, it is immaterial what kind of insulation was first used, because the highest degree of care in selecting the best known insulating tape would not relieve the defendant of a ·similar degree of care in thereafter keeping its wires properly insulated through inspection, repair, etc. But from another standpoint its rejection was harmful. As plaintiff himself argues, the jury were, in legal effect, told that, while the defendant's duty was the exercise of ordinary care only, yet, considering the business which it was carrying on, and in the light of the facts of the case, the law steps in and says that ordinary care in such a case is ''the highest degree of care which skill and foresight can attain consistent with the practical conduct of its business under the known methods and the present state of the particular art.'' Now, there was no direct evidence as to the actual condition of this wire before plaintiff grasped, or his hand came in contact with, it, and, in the absence of the evidence rejected, only by inference from conflicting evidence produced by the respective parties concerning its subsequent con-

dition could the jury say what such former condition was.

The defendant was not an insurer, and the jury were instructed that no presumption of defendant's negligence arose from the accident. Defendant, therefore, was not liable unless the evidence showed that it had omitted some necessary precaution in keeping its wire insulated. Surely, evidence that there was not known to the arts or commerce a perfect method of insulation, coupled with the fact, which defendant had already brought out in evidence, that it had used the safest known, was germane, and would help the jury in determining the previous condition of the wire; for while the specific charge was not the failure originally to use safe insulating tape on its wires, but omission to keep it so, evidence that the best known, though not absolutely safe, had been used, would aid the jury in ascertaining whether the method, or lack of method, observed by the defendant in inspecting, or failing to inspect, and repair or renew, the covering first put on, was a compliance with the high degree of care demanded of it. Obviously, if a perfect insulating device was known and not used by defendant, the plaintiff might prove it as bearing on a charge of negligence either in failing to use it at first, or not properly inspecting in order to maintain its contrivances in a proper condition of safety. For a similar reason, defendant should be permitted to show the non-existence of an entirely safe insulation, which, in connection with evidence that the best known had been used, constitutes evidence responsive to the very issue which the jury must decide. It seems to us that the rejection of such evidence was prejudicial to the defendant, while its admission could not harm the plaintiff. Indeed, in one sense the fact that a perfectly safe insulation is not known

might aid plaintiff's cause, in that its non-existence might require more frequent and diligent inspection than would be necessary were an absolutely safe protection available. Similar evidence was introduced in the *Lawrence case,* and commented on by this court as proper to be considered by the jury on the question of defendant's negligence.

8. Instruction No. 8 was as follows:

"If this plaintiff was of a degree of intelligence at the time of the accident to know of the dangerous qualities of electricity, still the jury are instructed that unless he knew or had some notice or reason to believe to the contrary, he is entitled to assume that the company had performed its whole duty in the matter of insulating its wires, and that the same were in safe and proper condition, and to act upon this assumption."

The defendant says that this instruction naturally led the jury to believe that the plaintiff might wholly neglect to take any precautions whatever to avoid danger from coming in contact with these wires, even though he knew of the dangerous qualities of electricity. We are inclined to believe that the instruction is susceptible of such a construction, and that, to prevent any misapprehension, there should be added to it the additional statement that plaintiff nevertheless could not recover unless he exercised a proper degree of care to avoid the danger, notwithstanding the assumption that defendant had done its duty.

9. We think the court did right in submitting to the jury the question of the alleged contributory negligence of the plaintiff. From the evidence it cannot be said, as a matter of law, that the plaintiff was, or was not, negligent in what he did. We have already considered a similar question in the case of *Daniels v. Johnston* at this term, *ante,* p. 177, and

there held, as we hold now, that under the evidence the question was one of fact for the jury under proper instructions. The jury was advised in this case that plaintiff could not recover if he was guilty of contributory negligence, and that was a question of fact for them to determine in the circumstances of the case, including the age, experience, knowledge and capacity of plaintiff to apprehend the particular danger.

10. In instruction No. 3 given to the jury the court said that if these wires and electrical appliances were so placed in the vicinity of the house where children *might* reach or come in contact therewith, then the defendant was under the duty to exercise the highest degree of care, etc. Defendant complains of this instruction and says that it is not the possibility, but the reasonable probability, of children coming in contact therewith which calls for the performance of such duty. While we do not, as plaintiff's counsel suggest, suppose that the jury understood from this direction that defendant was obliged to guard these contrivances from wanton assaults by children who might reach them from ladders or balloons, still we say that the court ought to make it plain to the jury that it is not a mere possibility, but a reasonable probability, of accessibility of the appliances to and by children, in a way similar to that in which plaintiff came in contact with them, that invokes the strict rule laid down.

For the reasons given the judgment is reversed, and the cause remanded with leave to the parties to amend their pleadings as they may be advised; and if another trial be had, it is to be in harmony with the views herein expressed.    *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.